IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No. 24-cv-03289-REB-KAS

BRIAN MARTIN,

    Plaintiff,

vs.

UCHEALTH HEPATOLOGY CLINIC AND TRANSPLANT CENTER,

    Defendant.

## ORDER GRANTING MOTION TO DISMISS

**Blackburn, J.**

The matter before me is the **Motion To Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6)** [#27],[1] filed March 25, 2025. I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question). I grant the motion.

As set forth in the operative **Second Amended Complaint** ([#26], filed March 11, 2025), plaintiff Brian Martin consulted with defendant University of Colorado Hospital Authority (misnamed in the caption as "UCHealth Hepatology Clinic and Transplant Center") [hereinafter "UC Health"] on February 5, 2024, for consideration of a liver transplant. Mr. Martin, who then had recently turned 70 years old, alleges that "[w]ithin the first 10 minutes of the interview," UC Health "denied [his] request for a liver

---

[1] "[#27]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

transplant because [he] was 'above our center's age cut off of 70 years old,'" and concluded the interview after asking "only minimal background questions." (**Second Am. Compl.** ¶¶ 4-6 at 2.)  The consulting physician memorialized this understanding, writing she had "discussed at our center age of 70 is a strict cutoff."  (*Id.* ¶ 7 at 2.)  Although Mr. Martin appealed this decision, he was told UC Health would not "make an age exception" in his case.  (*Id.* ¶ 8 at 2.)

Mr. Martin alleges UC Health provided no reason for its decision other than his age and did not complete an assessment of his suitability for a transplant before denying his request because of his age.  (*See id.* ¶ 9 at 2.)  He therefore brings a claim under the Age Discrimination Act, 42 U.S.C. §§ 6101 - 6107.  Although Mr. Martin later was approved to be on another facility's waiting list for a liver transplant (*see id.* ¶ 13 at 3), because a potential transplant recipient is permitted to be on multiple lists, he requests "an order enjoining [UC Health] from using this hard cut-off policy and directing [UC Health] to complete the analysis" of his request to be placed on the transplant waitlist, as well as a declaration that the policy is unlawful.  (*Id.* ¶ 10 at 3.)

UC Health moves to dismiss this claim for lack of subject matter jurisdiction and for failure to allege a plausible claim.  With regard to the former, UC Health contends Mr. Martin has not pled an injury-in-fact sufficient to give him standing to seek relief.  Because I find this issue dispositive, I do not consider UC Health's alternative argument that the operative complaint fails to state a plausible claim that Mr. Martin was denied a transplant because of his age.

A motion to dismiss for lack of standing implicates the court's subject matter jurisdiction, and, therefore, is construed pursuant to Fed. R. Civ. P. 12(b)(1).  ***See New Mexicans for Bill Richardson v. Gonzales***, 64 F.3d 1495, 1498-99 (10th Cir. 1995).  A 12(b)(1) motion may consist of either a facial or a factual attack on the complaint.  ***Baker v. USD 229 Blue Valley***, 979 F.3d 866, 872 (10th Cir. 2020).  Here, UC Health mounts a factual attack on the operative complaint; that is, it challenges the facts on which jurisdiction depends.  ***Strike, LLC v. Sandy Creek Farms, Inc.***, 2021 WL 4344939 at *2 (W.D. Okla. Sept. 23, 2021) (facial attack "challenges the sufficiency of the jurisdictional allegations;" factual attack contests "the facts upon which jurisdiction is predicated").  ***See also Baker***, 979 F.3d at 872 ("A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction.").

In analyzing a factual attack, I am not bound by the allegations of the complaint, but instead have "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  ***Stuart v. Colorado Interstate Gas Co.***, 271 F.3d 1221, 1225 (10th Cir. 2001).  Moreover, where the allegations of the complaint conflict with the facts shown by the exhibits, it is the exhibits which control.  ***Bird v. Martinez-Ellis***, 582 F.Supp.3d 909, 919 (D. Wyo. 2022), ***aff'd***, 2022 WL 17973581 (10th Cir. Dec. 28, 2022); ***Wood v. Houghton Mifflin Harcourt Pub. Co.***, 569 F.Supp.2d 1135, 1139-40 (D. Colo. 2008) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327 (3rd ed. 2004)).

UC Health submits two documents in support of its motion:  (1) the Position Statement UC Health filed in response to Mr. Martin's administrative complaint, which

3

includes a statement from Dr. Whitney Jackson, the transplant heptologist who conducted Mr. Martin's initial consultation, explicating the reasons for UC Health's decision not to pursue further evaluation in Mr. Martin's case (**Motion App.**, Exh. 1); and (2) a document containing Dr. Jackson's contemporaneous medical report of that assessment, as well as documents establishing Mr. Martin was placed on the waitlist for a transplant at Presbyterian/St. Luke's Medical Center in June 2024 and documents related to his administrative complaint (*id.*, Exh. 2).  Consideration of parts of these documents – particularly Dr. Jackson's notes from Mr. Martin's February 2024 consultation (*id.*, Exh. 2 at 105) and her subsequent explanatory statement (*id.*, Exh. 1 at 12-20) – is essential to evaluating the injury Mr. Martin allegedly suffered in this case, which in turn is necessary to determine whether he has established an injury-in-fact sufficient to confer standing.  I thus turn to that issue.

The requirement of standing ensures federal courts do not exceed their limited jurisdiction under Article III to consider "Cases" and "Controversies."  *See Murthy v. Missouri*, 603 U.S. 43, 56, 144 S.Ct. 1972, 1985, 219 L.Ed.2d 604 (2024).  *See also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341, 126 S.Ct. 1854, 1860, 164 L.Ed.2d 589 (2006) ("If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so.").  To establish standing, a plaintiff must demonstrate he has "suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy*, 244 S.Ct. at 1985 (citation and internal quotation marks omitted).  Mr. Martin bears the burden to prove

he has standing, ***Carney v. Adams***, 592 U.S. 53, 59, 141 S.Ct. 493, 499, 208 L.Ed.2d 305 (2020), by showing the operative complaint clearly alleges facts demonstrating each of the three distinct elements of standing, ***Spokeo, Inc. v. Robins***, 578 U.S. 330, 338, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016).

In this obligation, Mr. Martin fails utterly. His response to the motion barely addresses the question of standing. He makes no effort to show his claimed injury – the failure to be further considered for placement on UC Health's waitlist for a liver transplant – constitutes a concrete, particularized, and actual injury fairly traceable to UC Health's decision and redressable by a favorable ruling by this court. ***See Murthy***, 144 S. Ct. at 1986 (plaintiff must "support each element of standing"); ***Nova Health Systems v. Gandy***, 416 F.3d 1149, 1154 (10th Cir. 2005) (plaintiff "has the burden of establishing each of these three elements of Article III standing"). As it is not the court's responsibility to make arguments for a party which he has not made (or inadequately addressed) himself, ***Owen-Brooks v. DISH Network Corp.***, 2024 WL 4338133 at *13 (D. Colo. Aug. 23, 2024), ***adopted***, 2024 WL 4333660 (D. Colo. Sept. 27, 2024), the court could dismiss his complaint on this basis alone. Yet even considered substantively, Mr. Martin's alleged injury is insufficient to confer standing.

To begin, were Mr. Martin alleging he was denied a liver transplant, any such claimed injury would be purely speculative.[2]  ***See Arnett v. UCH-MHS***, 2024 WL

---

[2] Given the scarcity of available organs and various inefficiencies in the system of allocating and distributing organs, there is no guarantee that anyone accepted on a transplantation facility's waitlist will receive a donor liver. (**See Motion App.**, Exh. 1 at 13-14 (noting there are 9,500 people in the United States awaiting liver transplants in as of September 2024 and thus, "[r]egrettably, many more patients are added to the waitlist than can be transplanted").) ***See also*** UNOS, *The U.S. Organ Donation & Transplantation System* ("Every day, an average of 13 people die in the United States awaiting organ transplants.") (available at: https://unos.org/about/the-u-s-organ-donation-transplantation-system/) (last accessed: May 6, 2025).

5

5467462 at *3 (D. Colo. April 24, 2024); **SEBO America, LLC v. Azar**, 2021 WL 720170 at *6 (D. Colo. Feb. 24, 2021).  Indeed, he is not even alleging that he wrongfully was denied placement on the waitlist.  Instead, his claim is that he was denied the opportunity to complete a full assessment of his eligibility for the waitlist.  He thus essentially is claiming a loss of chance.

Courts have recognized loss of chance as sufficient to confer standing in a variety of contexts.  For example, in **Phoenix Bond & Indemnity Co. v. Bridge**, 477 F.3d 928 (7th Cir. 2007), **aff'd**, 128 S.Ct. 2131 (2008), the Seventh Circuit, relying on the Supreme Court's decision in **Northeastern Florida Chapter, Associated General Contractors of America v. Jacksonville**, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), held "loss of a (valuable) chance is real injury" where it was alleged a competitor for purchasing liens at county tax sales rigged the process by arranging for firms related to it to bid, *id*. at 930.  Because "[e]xtra bids reduce[d] plaintiffs' chance of winning any given auction," the plaintiffs suffered injury-in-fact insofar as they alleged an "actual (and substantial) reduction in the number of liens they take away."  **Id.**  The Seventh Circuit also found standing under the Fair Credit Reporting Act where the plaintiff's job offer was rescinded after the employer obtained a copy of her credit report without notice to her or her permission.  **Robertson v. Allied Solutions, LLC**, 902 F.3d 690 (7th Cir. 2018).  Even though the plaintiff did not dispute the accuracy of the report, the court found she was injured by the loss of the chance "to bring additional facts to the employer's attention that put matters in a better light" or to "convince [the] employer to revisit its decision."  **Id.** at 696-97.

Based on similar principles, federal courts have found standing where the plaintiffs were disappointed bidders on federal contracts, *see Coalition for the Preservation of Hispanic Broadcasting v. FCC.*, 893 F.2d 1349, 1363 (D.C. Cir. 1990) (citing cases) (Williams, C.J., concurring in the judgment), *on reh'g*, 931 F.2d 73 (D.C. Cir. 1991), *cert. denied*, 112 S.Ct. 298 (1991); lost the opportunity to obtain immigration parole, even though the ultimate decision to grant or deny parole was wholly discretionary, *see National Venture Capital Association v. Duke*, 291 F.Supp.3d 5, 13-14 (D.D.C. 2017); alleged claims for denial of access to courts, *see Monroe v. Beard*, 536 F.3d 198, 205 (3rd Cir. 2008), *cert. denied*, 129 S.Ct. 1647 (2009); or lost the chance to obtain a settlement when a bankruptcy court approved a structured dismissal that failed to follow ordinary priority rules, leaving the debtor without funds to pay damages in response to the plaintiffs' fraudulent conveyance lawsuit, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464, 137 S.Ct. 973, 983, 197 L.Ed.2d 398 (2017).  I thus accept the proposition that Mr. Martin's loss of the chance to be considered more fulsomely for inclusion on UC Health's transplant list potentially could constitute an injury-in-fact.

However, as one judge piquantly observed, "[t]his hardly means . . . that anyone can wander in off the street, pronounce himself a potential contestant, and thereby" establish standing. *Coalition for the Preservation of Hispanic Broadcasting*, 893 F.2d at 1363  (Williams, C.J., concurring in the judgment).  "Some indication of realistic prospects is also needed" because "a lost opportunity is no loss at all if there is no realistic chance of winning once the supposed illegality is corrected."  *Id.*  Thus, a

disappointed law school applicant had no standing to challenge the school's affirmative action program where the record showed he was plainly unqualified for admission. ***Doherty v. Rutgers School of Law-Newark***, 651 F.2d 893, 900 (3rd Cir. 1981). Similarly, to demonstrate standing, a political candidate challenging an opponent's inclusion on the ballot was required to demonstrate he had a chance of prevailing in the election which, while not definite, "must be more than a figurative pie in the sky – the plaintiff must truly [be] in competition with the purportedly ineligible candidate." ***Castro v. Oliver***, 711 F.Supp.3d 1272, 1278 (D.N.M. 2024), ***aff'd***, 2025 WL 467099 (10th Cir. Feb. 11, 2025) (citation and internal quotation marks omitted; alteration in original). ***See also Monroe***, 536 F.3d at 205 (to have standing on access to courts claim, plaintiffs must demonstrate "they lost a chance to pursue a nonfrivolous or arguable underlying claim"); ***Planned Parenthood Association of Chicago Area v. Kempiners***, 700 F.2d 1115, 1137 (7th Cir. 1983) (noting hypothetically that medical school applicant would not have standing to challenge constitutionality of race-based admissions policy if he was two years old).

Applying those precepts to this case, it is abundantly clear Mr. Martin does not have standing to challenge UC Health's policy regarding the allocation of organs for transplantation. While Dr. Jackson's notes do state Mr. Martin was "above our center's age cut off of 70 years old," it is plain that age merely triggered an additional level of review, which is why Mr. Martin was seen for an initial consultation. (**Motion App.**, Exh. 1 at 1.) Indeed, if UC Health really treated age as an impenetrable barrier to consideration for a transplant, Mr. Martin would not have been seen for a consultation

at all but merely rejected out of hand. Similarly, although Dr. Jackson referred to age 70 as a "strict cut off," she nevertheless consulted with her team to determine whether an exception could be made in Mr. Martin's case. (*Id.*, Exh. 1 at 1, 6; Exh. 2 at 19-20.)

More importantly, the record fully substantiates UC Health's decision that an exception was not indicated in Mr. Martin's case. For despite Mr. Martin's allegation that he was in relative good health, the record proves otherwise. ***See Wood***, 569 F.Supp.2d at 1139-40 (where allegations of complaint conflict with facts set forth in exhibits, exhibits control). In addition to advancing liver cancer, Mr. Martin has cirrhosis of the liver, type 2 diabetes with peripheral neuropathy, and a history of hepatitis C. In addition, he has a history of alcohol use disorder, and at the time he consulted with Dr. Jackson, had only recently stopped drinking. (**Motion App.**, Exh. 1 at 1-4.)

The record also reflects Mr. Martin significantly deferred appropriate treatment despite long-standing indications of potential liver problems. Mr. Martin was first noted to have elevated liver enzymes in 1983, but nothing in the medical record indicates he sought to find out the cause. In 2012, he was treated in the emergency room for an episode of jaundice, where the attending physician thought his "[l]ikely diagnosis is new onset alcoholic cirrhosis," which was consistent with his admission to drinking "several cases of beer a week." Nevertheless, it was more than a decade later before he quit drinking. Mr. Martin also tested positive for hepatitis C at that time, although he claimed he was unaware of his test result. (*Id.*, Exh. 2 at 15, 18.)

Dr. Jackson expressed surprise that Mr. Martin did not inquire about liver transplantation when a CT scan first revealed evidence of probable liver cancer in October 2022.  Typically, repeat imaging would have been advised within three months, but Mr. Martin did not receive a follow up scan until May 2023, which confirmed the presence of liver cancer.  Despite this news, he continued to use alcohol for several months thereafter.  (*Id.*, Exh. 2 at 17-18.)  Moreover, although doctors broached the issue of a transplant following that diagnosis, "this was something [Mr. Martin] didn't want to hear about at the time." (*Id.*, Exh. 2 at 18.)  Instead, he told his gastroenterologist he "would like to wait 6 months before deciding as to whether or not to purse a transplant evaluation," even though the doctor informed him "he could lose his window for transplant." (*Id.*, Exh. 2 at 16; **see id.**, Exh. 1 at 2 (Mr. Martin "discussed transplant" in August 2023 "but too much going on"), Exh. 2 at 18 (same).)  In the interim, he developed an additional cancerous lesion on his liver.  (*Id.*, Exh. 2 at 18-19.)

Even once Mr. Martin decided to inquire about transplantation, Dr. Jackson found he "seem[ed] pre-contemplative about transplant" (*id.*, Exh. 1 at 1), as he expressed "interest" but "not full commitment" (*id.*, Exh. 2 at 17).  Moreover, only a few weeks before seeing Dr. Jackson, Mr. Martin was seen in the wound clinic with full-thickness ulcerations on the bottom of both feet, indicative of poor wound healing and risk of infection post-surgery, as well as further evidence of poor self-care.  (*Id.*, Exh. 2 at 16, 19.)

Given Mr. Martin's significant comorbidities and history of deferred care and inadequate compliance, I cannot find that granting the relief he seeks – a further

evaluation of his suitability for transplantation with UC Health – would redress his alleged injury. Unfortunately, he has no realistic chance of being considered a candidate for transplantation at UC Health, regardless of his age. He thus lacks standing to pursue his claim. Accordingly, the court lacks subject matter jurisdiction and the motion to dismiss must be granted.

**THEREFORE, IT IS ORDERED** that as follows:

1. That the **Motion To Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6)** [#27], filed March 25, 2025, is granted;

2. That claims of Mr. Martin against University of Colorado Hospital Authority (misnamed in the caption as "UCHealth Hepatology Clinic and Transplant Center") are dismissed;

3. That judgment with prejudice shall enter on behalf of defendant, University of Colorado Hospital Authority (misnamed in the caption as "UCHealth Hepatology Clinic and Transplant Center"), and against plaintiff, Brian Martin, as to all claims for relief and causes of action asserted herein; and

4. That defendant is awarded its costs, to be taxed by the clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated May 6, 2025, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge